### A. DUNCAN PACAUD *et al.*

### *v.*

### CHARLES WAITE *et al.*

*Opinion filed October 24, 1905—Rehearing denied Dec. 7, 1905.*

1. PARTIES—*when president of corporation has a right of appeal.* The president of a board of trade corporation, who has been made a party, as representing the corporation, by the complainant in a suit involving the validity of a by-law or rule of the corporation, has the right, where the decision of the court is adverse to the validity of the rule, to have such decision reviewed on appeal.

2. CORPORATIONS—*members of the Chicago Board of Trade are bound by its rules.* Members of the Chicago Board of Trade are bound by its lawful rules, regulations and by-laws, since they bind themselves in writing to obedience thereto as a condition precedent to membership.

3. SAME—*section 6 of rule 20 of the Chicago Board of Trade is valid.* Section 6 of rule 20 of the Chicago Board of Trade, providing that when a margin is deposited to secure a sale or purchase, if the parties, after the contract is closed, cannot agree to whom the margin shall be paid, the president of the board shall appoint a committee to determine that question, which determination, when certified to the depository by the president of the board, shall authorize payment by the depository, is valid and binding upon members in the absence of fraud on the part of the tribunal appointed to act.

4. SAME—*member of board of trade must invoke remedies provided by its rules.* A member of the Chicago Board of Trade can not resort to a court of equity for relief in a matter for the hearing of which the rules of the board provide a tribunal, unless he has first submitted the matter to such tribunal, which, by fraud or otherwise, has refused to proceed to a hearing and determination of the matter; and this is true whether the matter relates to his membership rights or his property rights. (*People* v. *Board of Trade,* 45 Ill. 112, and *Pitcher* v. *Same,* 121 id. 412, followed.)

5. CONTRACTS—*parties may agree to submit matters in dispute to tribunals other than courts.* Parties may make valid and binding agreements to submit questions in dispute to the arbitrament of persons or tribunals other than the regularly organized courts.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

JAMES E. MUNROE, and HENRY S. ROBBINS, for appellants.

LYNDEN EVANS, and SEARS, MEAGHER & WHITNEY, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

On the fifth day of August, 1902, Charles Waite and Robert H. Thorburn, doing business as Waite, Thorburn & Co., filed a bill in chancery in the superior court of Cook county against A. Duncan Pacaud, William S. Warren, (president of the Board of Trade of the City of Chicago,) and the Bank of Montreal, for an injunction and an accounting. It was averred that the complainants and the defendant A. Duncan Pacaud on May 2, 1902, were members of said board of trade; that on that day the complainants, subject to the rules of said board, contracted to sell to the defendant A. Duncan Pacaud five thousand bushels of "standard" oats at thirty-seven cents a bushel, also five thousand bushels of "old style" oats at thirty-four and one-half cents per bushel, both of which said sales were made for July, 1902, delivery; that the complainants deposited with the Bank of Montreal the sum of $2350 to margin said contracts pursuant to the rules of said board of trade; that thereafter the market for July oats advanced, and on the last day of July the price for "standard" oats in five thousand bushel lots was sixty-four cents per bushel and that of "old style" oats in five thousand bushel lots was forty-seven and one-half cents per bushel. The bill alleged that these high prices were the results of manipulations of the market and the creation of a "corner" by persons other than the defendants; that the complainants had failed to deliver said oats; that said A. Duncan Pacaud was about to take steps to have said margins paid to him by said Bank of Montreal upon the basis of said fictitious prices under the rules of the said board of trade, and prayed that

A. Duncan Pacaud be enjoined from taking any steps to se-
cure the endorsement of said margin certificates which evi-
denced said deposit; ·that the president of the board of trade
be enjoined from endorsing or delivering said certificates to
A. Duncan Pacaud under the rules of said board of trade, and
that said Bank of Montreal be enjoined from paying said
margins to A. Duncan Pacaud. The bill also sought an ac-
counting between the complainant and A. Duncan Pacaud
upon the basis of the real market prices of said oats as dis-
tinguished from the alleged fictitious prices thereof at the
time the contracts matured. The said complainants offered
to pay to said A. Duncan Pacaud, in satisfaction of said con-
tracts, the difference between the contract prices and the
actual market prices of oats of those grades in the city of
Chicago on the 31st day of July, 1902. Answers and repli-
cations were filed, and the court, upon a hearing, entered a
decree finding that on July 31, 1902, the market prices of
said two grades of oats on the board of trade in the city of
Chicago were so manipulated by certain operators other than
the parties to this suit as to be in a condition commonly
known as "cornered," whereby the prices for oats in five
thousand bushel lots were stimulated in an abnormal degree,
and that the reasonable market prices of "standard" oats and
"old style" oats for July delivery were on July 31, 1902,
only forty-two and one-half cents and thirty-three cents per
bushel, respectively, and decreed that $275 of said margins
held by said Bank of Montreal be paid to A. Duncan Pacaud
and the balance thereof to complainants, and that the margin
certificates evidencing the deposit of said margins be surren-
dered and canceled. An appeal was prosecuted to the Appel-
late Court for the First District, where the decree of the
superior court was affirmed, and a further appeal has been
prosecuted to this court by A. Duncan Pacaud and William
S. Jackson, the now acting president of the board of trade.

The Board of Trade of the City of Chicago is a volun-
tary association, which was incorporated by special act of

the legislature on February 18, 1859, and whose objects are stated in its by-laws to be, "to maintain a commercial exchange; to promote uniformity in the customs and usages of merchants; to inculcate principles of justice and equity in trade; to facilitate the speedy adjustment of business disputes; to acquire and to disseminate valuable commercial and economic information, *and, generally,* to secure to its members the benefits of co-operation in the furtherance of their legitimate pursuits." And by section 1 of its charter it is declared to be a body politic and corporate, with power to sue and to be sued, implead and be impleaded, receive and hold property not to exceed in value $200,000, to have a common seal, and to make such "rules, regulations and by-laws, from time to time, as they may think proper or necessary for the government of the corporation hereby created, not contrary to the laws of the land," and sections 4, 6, 7, 8 and 12 of its charter are as follows:

"Sec. 4. The said corporation is hereby authorized to establish such rules, regulations and by-laws for the management of their business, and the mode in which it shall be transacted, as they may think proper.

"Sec. 6. Said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations and by-laws thereof.

"Sec. 7. Said corporation may constitute and appoint committees of references and arbitration and committees of appeals, who shall be governed by such rules and regulations as may be prescribed in the rules, regulations or by-laws for the settlement of such matters of difference as may be voluntarily submitted for arbitration by members of the association or by other persons not members thereof. The acting chairman of either of said committees, when sitting as arbitrators, may administer oaths to the parties and witnesses, and issue subpœnas and attachments, compelling the attendance of witnesses, the same as justices of the peace, and in like manner directed to any constable to execute.

"Sec. 8. When any submission shall have been made in writing and a final award shall have been rendered, and no appeal taken within the time fixed by the rules or by-laws, then, on filing such award and submission with the clerk of the circuit court, an execution may issue upon such award as if it were a judgment rendered in the circuit court, and such award shall thenceforth have the force and effect of such a judgment and shall be entered upon the judgment docket of said court.

"Sec. 12. Said corporation shall have no power or authority to do or carry on any business excepting such as is usual in the management of boards of trade or chambers of commerce or as provided in the foregoing sections of this bill."

And in pursuance of its charter the said board of trade passed a code of rules, regulations and by-laws for the government of its members and the regulation and control of the business which they should do, which were in force at the time the parties to said contract became members of said board of trade and at the time said contracts were entered into on May 2, 1902, and at the time they matured on the 31st of July of that year, and which are, in part, as follows:

By section 1 of rule 10 each person becoming a member of said board of trade is required to sign an agreement to abide by the rules, regulations and by-laws of the association and all amendments that may be made thereto; and section 1 of rule 20, which regulates the margining of future sales, is, in part, as follows: "On time contracts, purchasers shall have the right to require of sellers, as security, a deposit of ten per cent, based upon the contract price of the property bought, and further security, from time to time, to the extent of any advance in the market value above said price. Sellers shall have the right to require as security from buyers a deposit of ten per cent on the contract price of the property sold, and, in addition, any difference that may exist or occur between the estimated legitimate value of any such property

and the price of sale. All securities shall be deposited either with the treasurer of the association or with some bank duly authorized by the board of directors to receive such deposits,"—which depository shall issue a certificate, the form of which is prescribed by said rule.

Section 6 of rule 20 in part is as follows: "Upon the fulfillment or settlement of any contract or upon the closing of any contract under the provisions of section 5 of this rule, deposits upon which have been made, and when the full adjustment of all differences relating to the same shall have been effected, the deposits shall thereupon be payable to the party depositing the same, and the joint endorsement of both parties upon the certificate shall be a sufficient authority to the party holding the deposit to pay the same to the holder of the certificate; or in case of a failure between the contracting parties to adjust and settle their respective claims upon the deposit within three business days after the maturity of all contracts upon which the deposit is applicable, the matter in dispute shall, upon the application of either party to such contracts, be submitted to a select committee of three disinterested persons, members of the association, to be appointed by the president, which committee shall, without unnecessary delay, summon the parties before them, and hear such evidence, under oath, as either may wish to submit touching their claims to the deposit, and shall by a majority vote decide, and report to the president of the board, in writing, in what manner and to whom the deposit is payable, either wholly or in part; whereupon the president shall endorse on either the original or duplicate certificate an order for the payment of such deposits in accordance with the decision of said committee, and such order shall be a sufficient warrant to the party holding the deposit to pay the same in accordance with such order."

Section 1 of rule 23 reads as follows: "In case any property contracted for future delivery is not delivered at maturity of the contract, the purchaser may, if he shall so elect,

consider the contract forfeited, or he may purchase the property on the market for account of the seller by 1:15 o'clock of the next business day, notifying him at once of such purchase, or he may require a settlement with the seller at the average market price on the day of maturity of contract, and any damages or loss due to the purchaser by reason of such purchase or declared settlement shall be due and payable by the seller immediately."

The foregoing provisions are the only ones found in the charter or rules, regulations and by-laws of the board of trade to which our attention has been called which in any way, even remotely, bear upon the main question presented here for consideration, which is, can a member of the Board of Trade of the City of Chicago resort to a court of chancery to have that court settle the question to whom margins deposited by him under section 1 of rule 20 shall be paid by the depository before resort has been had to the tribunal provided for in section 6 of rule 20 of said board of trade to determine that question, or in the absence of a showing that after such question has been submitted to said tribunal that tribunal has, by fraud or otherwise, refused to proceed to hear and determine such question in accordance with the rules, regulations and by-laws of said board of trade.

It is suggested that the appeal should be denied as to the president of the board of trade, on the ground that he has no interest in the event of this suit which authorizes an appeal by him. He was sued and here defends as a representative of said board. The suit involves the validity of section 6 of rule 20 of the rules, regulations and by-laws of said board of trade, and the complainants having made the board, through its president, a party to this litigation for the purpose of determining that question and the decree being adverse to the validity of the rule, it would seem clear that the president of the board has the right to cause said decree to be reviewed in the Appellate and Supreme Courts of this State. The motion to dismiss as to the president of the board of trade will be overruled.

The board of trade does not buy or sell grain or other produce, but furnishes only a place where its members meet and between certain hours of the day deal with each other in grain or other produce under the rules, regulations and by-laws passed by the board of trade for the government of its members and the regulation and control of the business transacted by its members upon said board. The members of the board agree, in writing, as a condition precedent to membership, that they will abide by the rules, regulations and by-laws of the association, one of which is, that when a margin is deposited to secure a sale or purchase, if the parties to the contract, after the contract has been closed, cannot agree to whom the margin shall be paid by the depository, a committee consisting of three members of the board shall be appointed by the president of the board, who shall determine that question, which determination shall be certified to the depository by the president of the board upon either the original or the duplicate certificate which evidences the deposit, which endorsement of the president shall authorize the payment as therein directed by the depository. We see no reason why this rule should not be binding upon the members of the board of trade. The object of the rule doubtless is to provide a method whereby it may be determined promptly, after a contract has been closed, to whom the deposit shall be paid, and thereby relieve the members of the board from the expense and delay of a determination of that question in the courts.

In *People* v. *Board of Trade,* 45 Ill. 112, Page had been expelled as a member of the board for a failure to pay a promissory note which he had given to Stevens & Brown, also members of the board, in settlement of a contract made upon the board. He sought, by means of *mandamus,* to be restored to membership. The court, on page 115, after setting out the rule authorizing his expulsion, said: "One of the objects for which the board of trade was created, undoubtedly was to promote a high standard of commercial honor and

commercial credit in the city of Chicago by securing among the members of the board a prompt discharge of their pecuniary obligations, contracted in their dealings with each other, without a resort to the expensive and dilatory procedure of a court of law. In order to accomplish this, the charter authorizes the board to create within itself tribunals of reference and arbitration, by whose decision the members shall be bound."

In *Pitcher* v. *Board of Trade,* 121 Ill. 412, Pitcher was expelled from the board of trade. He filed a bill to restrain the board from interfering with his access to the floor of the board and from carrying on his business in that place. The court, in disposing of the case, held that where a person becomes a member of a voluntary association under and subject to the conditions of its charter and agrees to be governed by its rules and regulations and by-laws, among which is one providing for the trial and expulsion of members, and he is charged with one of the offenses named and expelled, and the proceedings are regular and in accordance with the rules, regulations and by-laws of the association, the sentence of expulsion will be conclusive on him.

An attempt is made to draw a distinction between those cases and the case at bar, on the ground that they recognize only the right to discipline the member, while this case involves the property rights of the member. We do not think the distinction a valid one.

In *Ryan* v. *Cudahy,* 157 Ill. 108, the question to whom the margin should be paid by the depository was submitted to a committee, as provided by section 6 of rule 20. The committee refused, however, to hear evidence that the market price for which the product in question sold on the day the contracts were closed was a fictitious price, and this court held that the refusal to hear such evidence was such an abuse of the committee's power and so far in violation of the rules of the board of trade as to justify a court of chancery in assuming jurisdiction for the purpose of determining the mar-

ket price of the product on the day the contract was closed
and stating an account between the parties. The validity of
section 6 of rule 20, however, was not called in question, but
the rule was fully recognized as being in force and binding
upon the parties to the transaction, and the relief was granted
solely on the ground that the committee had not proceeded
under said rule 20 in fixing the market value and in deter-
mining the question to whom said margins should be paid by
the depository.

It is suggested that to hold that the question as to whom
said margin should be paid, as between the parties to said
contracts, must be submitted to a committee, as provided by
said section 6 of rule 20, would be to permit the parties to
contract to deprive the courts of this State of jurisdiction
over the subject matter of said deposits. It has been fre-
quently held that parties may agree to submit questions to
the arbitrament of persons or tribunals other than the regu-
larly organized courts, and that such contracts are valid and
will be enforced. It has thus been held with reference to
building contracts which provided that disputed questions
should be submitted to the architect and that payment should
not be made without his certificate; (*McAuley* v. *Carter,* 22
Ill. 53; *Coey* v. *Lehman,* 79 id. 173; *Arnold* v. *Bournique,*
144 id. 132;) also in railroad contracts providing that ques-
tions in difference should be determined by the engineer;
(*Sweet* v. *Morrison,* 116 N. Y. 19;) also in insurance con-
tracts providing that the amount of loss should be deter-
mined by the arbitrators. *Niagara Fire Ins. Co.* v. *Bishop,*
154 Ill. 9.

It is also suggested that section 6 of rule 20 is invalid by
reason of the fact that it provides for compulsory arbitration,
while the charter (sections 7 and 8) only authorizes a vol-
untary submission. The by-law in question was passed by
virtue of section 4 of the charter, which authorizes the asso-
ciation to establish rules and regulations and by-laws for the
management of its business, the manner in which it shall be

transacted, etc., and not by virtue of sections 7 and 8, which apply to a different class of subjects and which involve only a voluntary submission. When the complainants became members of the board of trade they agreed to be bound by its rules, regulations and by-laws, and so soon as they made a deposit of margins under section 6 of rule 20 they became bound to submit the question as to whom such margins should be paid by the depository, in case of dispute, to a committee appointed under said rule, and were bound by the decision of that committee, unless they could show that the committee, as organized, failed and refused to give them a hearing in accordance with said rule 20, but arbitrarily and without reference to the rules of the board of trade refused to consider the question of actual market value and to whom the said depository should pay said margins, in which event, under the authority of *Ryan* v. *Cudahy, supra,* a court of chancery had jurisdiction to consider those questions, otherwise not. The record before us shows that the complainants are members of the board of trade; that when they joined the association, like all other members, they agreed to abide by and be governed by the rules, regulations and by-laws of the association; that they made the contracts and deposited the margins hereinbefore referred to under section 1 of rule 20; that section 6 of rule 20 provided for a committee to determine to whom the deposit should be paid after the contracts were closed, in case of dispute; that there was a dispute as to whom the margins, or a part thereof, should be paid; that in lieu of submitting that dispute to a committee, as provided by section 6 of rule 20, this bill was filed. We are of the opinion section 6 of rule 20 is a valid by-law of said board of trade and that the bill cannot be maintained.

The judgment of the Appellate Court and the decree of the superior court will be reversed and the cause will be remanded to the superior court, with directions to dismiss the bill.        *Reversed and remanded, with directions.*