DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1911.

## The Federal Contracting Company, Appellee, v. The Coal Creek Drainage and Levee District, Appellant.

1. CONTRACTS—*when deviation in performance of building, will not preclude recovery.* Recovery may be had for a balance due under a building contract notwithstanding the work was not done in exact compliance with the original specification if the deviation is clearly shown to have been instituted by changes subsequently made in such specifications.

2. CONTRACTS—*effect of decision of architect.* Where parties to a contract have agreed to submit all questions to the decision of an architect or other umpire and to.pay upon his certificate of performance, his acceptance and certificate is final and binding unless fraud or mistake can be shown.

3. CONTRACTS—*when final certificate of architect not condition precedent to recovery.* Notwithstanding a contract provides for the payment of certain work upon the certificate of an architect in charge of the work, such a certificate is not a condition precedent to recovery where a good and sufficient excuse is shown for a failure to obtain it.

Assumpsit. Appeal from the Circuit Court of Schuyler county; the HON. HARRY HIGBIE, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed December 13, 1911. *Certiorari* denied by Supreme Court (making opinion final).

GLASS & BOTTENBERG and L. A. JARMAN, for appellant.

MILTON MCCLURE and W. H. DIETERICH, for appellee.

(369)

370    APPELLATE COURTS OF ILLINOIS.

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

**Per Curiam.**    This is an action of assumpsit brought in the Circuit Court of Schuyler County by the Federal Contracting Company, a corporation, upon a written contract entered into between it and the Coal Creek Drainage and Levee District, defendant, by which plaintiff undertook to do certain work of excavation and construction for the defendant. A trial before the court without a jury resulted in a finding and judgment in favor of plaintiff for $6,351.31 and costs, to which finding and judgment defendant excepted and has appealed to this court.

The events leading up to the execution of the contract in question were as follows: The defendant drainage district was organized in 1896 under the levee act, and embraces about 6,700 acres of land, 4,900 acres of which are owned by George B. Christie and Jesse Lowe. Frank J. Trout, Thomas K. Condit, John Schultz and T. J. Hodgson were some of the other landowners in the district. Several attempts were made to protect the land in the district from the overflow waters of the Illinois River, and in 1898 the district contracted with Christie & Lowe to build a levee about the same and to construct certain interior ditches, F. J. Trout acting as manager of the work. Again in 1900 the district let a contract to Christie & Lowe to build the "Bluff Ditch," the purpose being to intercept the bluff waters and conduct them around the district to avoid the pumping thereof. The interior ditches soon began to fill up, as there was no current for their drainage except that created by pumping the water, and the Bluff Ditch proved wholly insufficient for the purpose intended, so that the bluff waters continued to come down over the district and flood the lands. In 1908, Mr. Trout, then sole commissioner, at the instance of Christie & Lowe, took steps to further improve the district, with a view to the successful reclamation of the lands. Jacob A. Harmon, a civil engineer of Peoria, Illinois, was called into conference and requested to

THIRD DISTRICT—DECEMBER, 1911.     371

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

submit plans for the excavation of the old ditches and the construction of new ones, under some method which would insure success. Harmon submitted a new scheme by which a series of settling basins were to be built in connection with the Bluff Ditch to receive the water and all soil deposits in times of heavy rain fall, and thus make the ditch care for the water and prevent its filling by deposit. T. J. Schweer, J. H. Coleman and George Hanna were then appointed commissioners in conformity with a decision of the Supreme Court that landowners within the district could not make an assessment for the improvements. The new commissioners advertised for bids, and the contract for the entire work was awarded to the Federal Contracting Company of Beardstown, Illinois, a corporation having three stockholders, of which, as shown by the evidence, F. J. Trout is the manager and principal owner and who did all the work.

The contract called for the re-excavation and improvement of Bluff Ditch, the construction of settling basins or reservoirs and the erection of levees at certain places on the lower side of said ditch; also the re-excavation of a ditch known as the Coal Creek Main Ditch, and the construction of three other ditches known as the "West Lateral," the "East Lateral" and "Branch A of the East Lateral." The plaintiff was also required to clear the right of way.

The specifications divided the work into two sections, section 1 being the Bluff Ditch and involving the movement of approximately 156,500 cubic yards of earth; and section 2, the other ditches, called the open ditches, involving the movement of approximately 259,600 cubic yards.

The declaration consists of four counts. The first count, after setting out the contract in full, avers that plaintiff proceeded to do the work according to the profiles and specifications, but was unable to finish the work, known as Bluff Ditch, by January 1, 1909, and

372   Appellate Courts of Illinois.

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

the balance of the work by April 1, 1909, as provided by the contract; that it was unable to complete and finish the contract until October 17, 1909; that the delay was not the fault of plaintiff, but was caused wholly by defendant; that the causes of the delay were, (1) because plaintiff was ordered to construct the Bluff Ditch to the height of 20 7-10 feet for the distance of three-quarters of a mile instead of 13 2-10 feet, as originally planned and constructed; (2) because the location of the channel of the Bluff Ditch was changed for one mile or more, requiring more difficult and prolonged work and handling of much earth; and (3) because the commissioners wrongfully caused the water to be pumped from the main ditch of the district to so shallow a depth that the plaintiff could not proceed with the work of dredging; that on October 17, 1909, it had fully completed all the work it had contracted to do in substantial compliance with its said contract and with the plans, profiles and specifications therefor; and that on that date and ever since that time has been entitled to a certificate of the completion of said work done to be executed by the engineer and commissioners, as provided by the contract, but that just before the work was finished, to-wit, on October 14, 1909, it was notified in writing by defendant that Jacob A. Harmon, the engineer of the district, was no longer the engineer in charge; that later the commissioners refused to give plaintiff a certificate of completion or to make a final estimate of the amount due it, presenting as a reason for its refusal a letter of one C. W. Brown, who claimed to be the engineer of the district; that the removal of Harmon and the appointment of Brown was part of a wrongful and fraudulent design on the part of two of the commissioners of the district, to prevent the issuance of the certificate, which said Harmon was ready and willing to issue; that the sum of $33,633.18 has already been paid plaintiff, but that there is still due and unpaid to it the sum of $5,738.45.

The second count alleges that defendant caused to be assessed against the lands in the district, $63,600, by proceedings in the County Court of Schuyler county, to make certain improvements in said district, and that plaintiff entered into a contract with defendant to do the work, as provided in the contract set out in the first count, and entered upon the construction of said work; that after work had been begun certain changes were made by the defendant and its engineer, which made it impossible for plaintiff to finish the Bluff Ditch by January 1, 1909, and the balance by April 1, 1909, and the work was not completed until October 17, 1909, for the reasons set out in the first count; that defendant did not adequately extend the time for completion of the work, but demanded that plaintiff put on additional force, and in consequence of such demand the plaintiff employed a large number of teams and men to work with scrapers, in addition to the land dredges already in operation; that plaintiff also sublet the work on Bluff Ditch at the price of eight cents per cubic yard; that if no changes had been made, the land dredges and equipment would have been adequate to have completed the work within the time specified; that on account of the additional help employed plaintiff paid out $5,-495.12 over and above the price at which plaintiff had contracted for the construction of Bluff Ditch; that the original estimate upon which the assessment was based exceeded the price for which plaintiff contracted to do this work by $6,000 and that defendant was, therefore, fully authorized to give directions for the work made necessary by the changing of Bluff Ditch, which fact was known to plaintiff when it consented to do the additional work required by the changes; that plaintiff did complete the additional work required by the changes on October 17, 1909, and demanded a certificate of completion, as set forth in the first count, and that defendant was liable to pay to plaintiff, on account of such additional work, $5,495.12 in addition to the contract

374    Appellate Courts of Illinois.

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

price, making the whole amount due plaintiff, $11,-233.57.

The third count alleges substantially the same cause of action as the second count.

The fourth count is the common counts, alleging defendant's liability to plaintiff as $12,000.

On the trial plaintiff presented an amended account, showing the amount due to be $6,351.31, according to the certificate of the engineer, Harmon, and also the sum of $227.93 for extra work.

Defendant pleaded the general issue and three special pleas of set-off. The special pleas set up a cross-action for damages, based upon the allegation that the plaintiff did not perform the work mentioned in the manner provided for by the contract; denied that the engineer, Harmon, made any decision as to the quality and quantity of workmanship, and stated that any decision he did make was made fraudulently, negligently and in utter disregard of the rights of defendant and in fraud of its rights in the premises. The set-off claimed by defendant amounted to $17,783.44. A replication was filed and issue joined.

The court below found that plaintiff was entitled to recover the balance due for work done under the contract, which amounted to $6,351.31 but that it was not entitled to recover for extra work amounting to $227.92.

The main question to be considered is whether plaintiff did complete the work in the time specified and in the manner provided for by the specifications and the contract, and if not, was the delay occasioned by, and the change in the manner of construction due to the fault of the plaintiff, or made necessary on account of new duties, not contemplated by the contract, imposed upon plaintiff by defendant.

The questions involved in the construction of the two sections mentioned in the specifications are so different as to make a separate consideration of them advisable. The work called for in the first section,

THIRD DISTRICT—DECEMBER, 1911. 375

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

known as the Bluff Ditch, was all sublet by plaintiff
to other contractors, and plaintiff itself did none of
the work thereon. The contract contemplated, for the
most part, the re-excavation and enlargement of the
old ditch, but in some places the old bed was departed
from. After the work had been begun by the sub-con-
tractor, and in the absence of Trout, plaintiff's man-
ager, the commissioners and Harmon, their engineer,
at the request of Mr. Christie and perhaps other land-
owners, directed the sub-contractor to move his ma-
chinery into the old ditch and make the excavation
there instead of along the line designated in the plans,
which the sub-contractor did. This change proved ex-
tremely detrimental to the rapid prosecution of the
work, because the new conditions under which the ma-
chine was required to operate strained its capacity and
caused frequent breaks and delays. Mr. Trout, on his
return, disapproved of the change, but permitted the
work to proceed. The work progressed, however, very
slowly, and the commissioners and engineer, Harmon,
fearing the work would not be completed before the
spring floods, urged plaintiff to employ more help,
whereupon plaintiff put another sub-contractor on the
work, and later, upon the further solicitation of the
commissioners, employed a large number of men with
teams and scrapers. With this additional help, how-
ever, plaintiff was unable to complete the work by
April 1, 1909, to which date the time of completion of
the work was extended. In addition to the above
changes, it was discovered, after the work at the upper
end of the ditch, where Hood's basin was located, was
well under way, that for three-quarters of a mile a
mistake in the height of the levee had been made in the
specifications, and that the levee for that distance
would have to be constructed to a height of 20.7 feet
instead of 13.2 feet, as provided for by the plans. This
created an additional burden and delay, and taxed the
capacity of the dredge to the utmost. In fact, the

additional height could not be built with the machine then in use, and at the same time leave the berm provided for in the specifications, and in order to expedite the work the engineer, Harmon, gave the sub-contractor orders to cut away a part of the berm, and as a result the work was not completed either in the time or in the manner contemplated and provided for by the contract. Although the original plans had been materially altered, and without consulting the manager of plaintiff in regard to some of the changes, yet the evidence shows that the work, as completed, was approved by the engineer and a majority of the commissioners, and that a certificate of completion was given by the engineer, Harmon, to plaintiff.

It further appears that the commissioners would have given an order for final payment of Bluff Ditch, but for the advice of their attorney that they should not pay in full for the work on the Bluff Ditch until the final completion of the whole work. However, this portion of the work was considered as completed, and the sub-contractors were allowed to withdraw their machinery.

The contract between plaintiff and defendant provided that the work should progress in such order as the engineer should direct and that he should give full instructions to the contractor; that his decision as to the quality and quantity of material and workmanship should be final; that he should make estimates of the work done each month upon which the commissioners should pay 85 per cent of the value thereof, and upon final completion of the work in accordance with the plans and specifications, he should prepare a final estimate of the amount and value of work done, deducting all previous payments, and if the work was accepted by the engineer and commissioners, the contractor should be paid in full; that the engineer should approve of the manner in which work, done by steam shovel or dredge, should be carried up the

fill; that the word "engineer" in the contract and specifications should be understood to refer to Jacob A. Harmon, civil engineer of Peoria, Illinois, or his duly authorized representative acting in his behalf.

A careful examination of the contract sued on, and a thorough consideration of the evidence introduced to show the work done and the conditions under which it was done, forces us to the conclusion that plaintiff is entitled to recover the full amount remaining unpaid for work done under the Bluff Ditch portion of the contract, and that defendant district is not entitled to any set-off against the same. The work on the Bluff Ditch was done under the direction of the engineer named in the contract, was approved by the commissioners and a certificate of completion given by the engineer, which also met the approval of the commissioners. While the work was not done in exact compliance with the original specifications, the deviation is clearly shown to have been necessitated by changes subsequently demanded by the engineer and commissioners. The law is well settled that where parties to a contract have agreed to submit all questions to the decision of an architect or other umpire and to pay upon his certificate of performance, his acceptance and certificate are final and binding unless fraud or mistake can be shown. Canal Trustees v. Lynch, 10 Ill. 521; Finney v. Condon, 86 Ill. 78; Michaelis v. Wolf, 136 Ill. 68; Barney v. Giles, 120 Ill. 154; Pâcaud v. Waite, 218 Ill. 138; Lohr Bottling Co. v. Ferguson, 223 Ill. 88.

As to plaintiff's right to recover the balance due under the contract for work done under section 2 of the specifications, we are of the opinion, after a careful examination of the record, that it is entitled to recover. The evidence shows that in July, 1909, plaintiff claimed to have finished this portion of the work in accordance with the specifications, and applied to the engineer for a certificate of completion. The com-

378    APPELLATE COURTS OF ILLINOIS.

The Federal Con. Co. v. The Coal Creek Etc. Co., 166 Ill. App. 369.

missioners and engineer, however, refused to accept the work as it then stood, claiming that it was not properly and fully completed, and a controversy arose which was finally settled by an agreement · between plaintiff and the commissioners to the effect that some additional excavations should be made in the lower end of the main ditch, and when this was done, the whole work would be accepted and payment made in full. This work was done, but in the meantime the board of commissioners had been reorganized (a dispute having arisen between the preceding board members), and the engineer, Harmon, was discharged and acceptance and payment refused.

Defendant contends that this ground of recovery cannot prevail, (1) because it is not set up in the declaration; (2) because no such agreement was made; (3) because, if made, it was not acted upon by the board at a regular meeting, but was the act of two commissioners individually; and (4) because such action, if taken, was a fraud upon the district and landowners, as the work was not done in accordance with the specifications.

As to the first contention, it is sufficient to say the ground of recovery relied upon is sufficiently set out, when the pleadings are considered as a whole. It clearly appears by the testimony of two of the commissioners and the engineer that such an agreement was made between them and the plaintiff. We do not think it was necessary that the commissioners should have had such agreement entered upon their records before the same would become binding. It is enough that two of the commissioners, being a majority of the board, together with the engineer, acting in good faith, approved of the work as finally completed, and under the circumstances in this case we do not think the charge of fraud can be sustained.

While no certificate of completion was given to plain-. tiff, its failure to receive such certificate was not its

fault, nor that of the engineer, but was due to the fault of the reorganized board which had caused the dismissal of Harmon before the certificate had been given. Harmon testified at the trial that he was ready to give a certificate, and a final certificate, as prepared by him, was properly admitted in evidence to show that the engineer, according to his testimony, had been ready and willing to give one. Where a contract provides for the payment of certain work upon the certificate of the architect in charge of the work, the obtaining of such certificate is a condition precedent to plaintiff's right to require payment, and such condition must be strictly complied with, unless a good and sufficient excuse can be shown for non-compliance therewith. Wolf v. Michaelis, 27 Ill. App. 336; Downey v. O'Donnell, 86 Ill. 49; Fowler v. Deakman, 84 Ill. 130; Barney v. Giles, 120 Ill. 154; Michaelis v. Wolf, 136 Ill. 68.

We are of the opinion that plaintiff is entitled to recover the amount remaining due for work done under the contract, amounting to $6,351.31, but not for any extra work claimed by plaintiff, and finding no reversible error in the record, the judgment of the court below will be affirmed.

*Affirmed.*