Jennie M. O'Brien, Appellant, v. Rose D. Rittman et al., Appellees.

## Gen. No. 17,439.

1. FRATERNAL SOCIETIES—*rules are binding on members.* By the act of joining a fraternal benefit association, a member impliedly agrees to be bound by its constitution, rules and by-laws.

2. FRATERNAL SOCIETIES—*expelled members must exhaust remedies within the order.* Where the constitution and by-laws of a fraternal society provide for the trial of members before a certain tribunal with a right to appeal to a higher tribunal, a member claiming to have been wrongfully expelled cannot maintain a suit to enjoin the society from refusing further to recognize or treat him as a member or to compel by mandamus the restoration of his privileges as a member until he has exhausted all the remedies provided by the rules and laws of the society.

3. FRATERNAL SOCIETY—*remedy of expelled member charging libel is at law.* Where a member, before exhausting his remedies within the society, seeks to enjoin a fraternal society and its tribunal from carrying into effect its edict of expulsion, and alleges that the tribunal did not act in good faith and is about to make the void expulsion the pretext for publishing a libelous report of proceedings in the official paper of the society, if the report is libelous the remedy is not in equity but at law.

4. FRATERNAL SOCIETIES—*when failure of expelled member to appeal is not excused.* Where a member expelled from a fraternal society does not appeal to a higher tribunal as provided by the constitution and by-laws, and on a bill for an injunction alleges that because of the delay an appeal would amount to a denial of justice, in the absence of a showing that delay will deprive complainant of any of her rights, it will be presumed that if she were successful on appeal, she would be fully restored to all her rights, including any that might be lost pending the hearing.

5. FRATERNAL SOCIETIES—*when expelled member is not affected by prejudice of member of tribunal.* Where a member of a fraternal order is expelled for violating the rules of the order in having a violent altercation with an officer at a meeting, the fact that

such officer was a member of the trial tribunal and on appeal would have the appointing of the higher reviewing tribunal is not a ground for enjoining the society from carrying out its edict of expulsion or of excusing a failure to take an appeal to such higher tribunal as provided by the constitution and by-laws.

6. FRATERNAL SOCIETIES—*remedy of expelled member is at law.* Where a member of a fraternal society is expelled for violation of its rules, the remedy of the member is at law and not by an injunction to restrain the society and its directors from carrying into effect its edict of explusion.

Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed January 9, 1913. Rehearing denied January 23, 1913.

FRANCIS A. MCDONNELL and FRANK L. FOWLER, for appellant.

RICHARD W. CLIFFORD and I. T. GREENACRE, for appellees.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a decree of the circuit court dissolving a preliminary injunction and dismissing appellant's bill of complaint. The case was heard upon the bill, the answers and a number of affidavits. It appears from these documents that for several years prior to the time of filing her bill of complaint, appellant was a member of a fraternal insurance society known as the Women's Catholic Order of Foresters, which is one of the defendants to the bill; that the appellees, other than the society itself, constitute the board of directors or trustees, who are known as the High Court, and are entrusted with the management of the society, under the rules and regulations adopted by the "triennial session," a convention composed of the High Court and representatives elected by the various subordinate courts or lodges of said society; that for several years appellant has been the financial secretary of one of the subordinate courts, and was

paid sixty dollars a year for her services as such; that she was also chief clerk to the High Secretary of the order (who is her sister) and received a salary of nine hundred dollars a year for her services as such clerk, under a written contract covering a period ending in September, 1911; that she also holds a life insurance certificate for $1,000, issued to her by the society, upon condition that she comply with the laws, rules and regulations of the order; that at the last meeting of the "triennial session" held in Detroit, in September, 1908, a ballot was taken for the election of a High Chief Ranger, an officer corresponding to that of president in other corporations; that appellee, Rose D. Rittman, received four hundred votes and Elizabeth Rodgers 399 votes; that the latter gave notice of a contest; that said Rose D. Rittman at once took possession of the office and retained counsel to protect her rights; that such counsel rendered certain services in connection with a quo warranto proceeding instituted by Elizabeth Rodgers, and presented a bill to the society for $2,792 for fees in that matter, which was approved and ordered paid by the High Court, against the protest of the High Secretary, who, on the advice of other counsel, refused to draw or attest any voucher for the payment of said bill; that said High Secretary, though elected at the same time as said Rose D. Rittman, was on the same ticket with Elizabeth Rodgers and was very loyal to her; that out of these facts strife and dissension arose in the High Court, and it is charged in the bill of complaint (though denied by the answers, except the answer of the High Secretary) that the appellee, Rose D. Rittman, "began a system of persecution and palpable oppression of the said High Secretary, seeking to compel her resignation," by interfering with her work, intercepting correspondence, removing her telephone, and by divers other like means set out at great length in the bill of complaint; that these differences culminated in appellant's creating a disturbance in one of

the meetings of the High Court, held in June, 1909, which disturbance is alleged by appellant to have consisted merely in her entering the room while a meeting was in progress, and leading out her sister, the High Secretary, who was crying and "suffering from the persecution which for five days had been practiced against her," saying at the same time to the presiding officer (appellee, Rose D. Rittman), "You must not persecute my sister;" while on the other hand, it is alleged by all the answers, except that of the High Secretary, that appellant not only thus entered the room and led her sister out by the arm, but that she physically assaulted the High Chief Ranger; that as a result of such disturbance, formal charges were preferred against appellant and she was given a trial before the High Court, found guilty of violating the rules of the order, and sentenced to be expelled; whereupon appellant filed her bill of complaint, seeking to enjoin the society and its High Court from carrying into effect its edict of expulsion. It is alleged in the bill that the trial, and all proceedings connected therewith, were void for want of jurisdiction, and were characterized by manifest prejudice and gross unfairness; that the charges were unfounded in fact, and that appellant was entitled to a trial in any event, according to the rules of the order, by a jury of twelve in her own subordinate court. It appears, however, from the copy of the constitution and by-laws in evidence, that one of the provisions thereof expressly authorizes the High Court to try any member of the society for an alleged infraction of the rules.

It is also alleged that the by-laws require a two-thirds vote of the High Court to expel a member; that the High Court consisted of eleven members, and while eight of these voted for the expulsion, one of the eight was appellee Rittman, who was personally interested and that without her vote, the necessary two-thirds could not have been obtained to a verdict of guilty. The constitution and by-laws also provide for an ap-

peal to the triennial session of the order, and it is alleged in the answers, and supported by affidavits, that no such appeal was taken by appellant within the sixty days fixed by the by-laws for giving notice of such appeal. The bill also mentions this provision for an appeal, but avers that such an appeal would be of no avail to her, because of the alleged fact that the committee which would try the case on appeal would be the "creature by appointment" of the High Chief Ranger, Rose D. Rittman. Upon filing the bill and sundry affidavits submitted therewith, a temporary injunction was ordered. After the filing of the answers and a number of affidavits in support thereof, this injunction was dissolved. A petition for a change of venue on account of the alleged prejudice of the judge was then presented, which was denied and the bill of complaint was thereupon dismissed for want of equity.

It appears from the evidence that the appellee society is organized as a fraternal benefit association— a corporation not for profit. In Illinois, the rule is well established that by the act of joining such an association, a member impliedly agrees to be bound by its constitution, rules and by-laws. If a specified body of members is thereby given the power to hear and determine disputed questions concerning any matter covered by such laws or rules, with a right of appeal to a higher tribunal within the organization, the member impliedly agrees to resort to such remedies before bringing an action in court. Hence it is uniformly held that in such cases, a member who claims he has been wrongfully expelled cannot maintain a suit to enjoin the society or association from refusing further to recognize or treat him as a member thereof, or to compel, by mandamus, the restoration of his privileges of membership, until he has exhausted all the remedies provided by the rules and laws of the society. People v. Women's Catholic Order of Foresters, 162 Ill. 78; People v. Grand Lodge Knights of Pythias,

166 Ill. 71; Pitcher v. Board of Trade, 121 Ill. 412; Pacaud v. Waite, 218 Ill. 138; Allen v. Chicago Undertakers' Ass'n, 232 Ill. 458.

In People v. Women's Catholic Order of Foresters, *supra,* it is also said (p. 84): "There is a distinction between the question of the validity of the expulsion when it is set up as a defense to an action upon a benefit certificate or other contract, and the question of the validity of the expulsion when restoration to the privileges of the society is sought to be secured through the writ of mandamus or other procedure. In the former case, it is sufficient for the beneficiary to show, that the judgment of expulsion was invalid, without further showing the exhaustion of all remedies within the order or society for the purpose of having the judgment vacated. * * * In the latter case, it must appear that the remedy provided by the rules of the society for the review of the judgment complained of was resorted to."

In Pacaud v. Waite, *supra,* a sum of money had been deposited in a bank as margins upon contracts between two members of the Board of Trade of Chicago providing for the future delivery of a certain quantity of oats at certain prices, and as the result of an alleged "corner" in oats the market price of oats advanced far beyond the stipulated prices. Thereupon the sellers filed a bill seeking to enjoin the buyer from collecting the margins in accordance with the rules of the Board of Trade, offering to pay the difference between the contract prices and the actual prices at the time the contracts matured as distinguished from the alleged fictitious prices caused by the alleged "corner." The lower court granted the injunction, but on appeal, the supreme court reversed this decision and remanded the cause with directions to dismiss the bill, upon the ground that the rules of the Board of Trade, which the complainants agreed to abide by when they became members thereof, required such disputes to be

submitted to a committee of the board. It was there contended that a distinction should be made between cases involving only the right to discipline a member of such an organization and cases involving the property rights of the member. The court held, however, that no such distinction exists; that the agreement of a member to submit disputes to the decision of a committee is valid and enforceable according to its terms, whether property rights are involved or not, on the same principle that upholds and enforces agreements in building contracts which provide that payment shall only be made on architect's certificates, or agreements for arbitration in fire insurance contracts, and the like.

In Pitcher v. Board of Trade, *supra,* it was held that where a member is expelled after a trial conducted in accordance with the rules of the association, the sentence of expulsion is conclusive upon him, and this decision was cited and the same principle followed in Pacaud v. Waite, *supra.*

Appellant's counsel seek to avoid the application of these principles to the facts of this case by contending that an exception exists or should be made here because of the averments in the bill to the effect that appellant was entitled to be tried by a jury selected from her own subordinate court, that appellees have not acted in good faith, but are about to "make a void expulsion the pretext" for publishing a libelous letter in the official paper of the society, and that the provision of the by-laws for an appeal to the triennial session is unreasonable and amounts to a denial of justice because of the delay and the improbability of a fair hearing before a committee of the convention appointed by the High Chief Ranger.

As above stated the by-laws offered in evidence contain an express provision for such a trial as was had before the High Court. The publication referred to

seems to be only a report of those proceedings. If the report be libelous, the remedy would not be in equity but at law. As to the alleged delay involved in the remedy by appeal, it does not appear from the bill or affidavits that mere delay will necessarily or probably deprive appellant of any of her alleged rights. In the absence of such a showing, it must be presumed that if she were successful on appeal, she would be fully restored to all her rights, including any that might be lost pending the hearing of the appeal. It is alleged in the answers (which are supported by affidavits) that at the last convention of the order, a number of similar appeals were heard, and that the Committee on Appeals, after such hearings, "reinstated in good standing in said order persons who had been expelled therefrom by the decision of the High Court." It cannot be assumed that a different result would have followed in appellant's case, if she had given due notice of an appeal and had proved that she was entitled to a reversal of the decision of the High Court. As to the alleged prejudice and disqualification of part of her triers, the same contentions were made in Pitcher v. Board of Trade, *supra*, and in Green v. Board of Trade, 174 Ill. 585, and were there held untenable under circumstances akin to the facts in this case.

In what has been said above, we have endeavored to cover fully the points raised, in view of the very earnest contentions of counsel. We might well have based our conclusion in this case, however, upon the simpler doctrine so clearly stated in Bostedo v. Board of Trade, 227 Ill. 90, viz.: that "a court of equity will not entertain a bill by a member of a private corporation against the corporation and its officers to restrain them from expelling the complainant for a violation of its rules and by-laws, and that the remedy of such member, if any there is, is in a court of law." The same rule was repeated in Allen v. Chicago Undertakers'

Ass'n, 232 Ill. 458, citing a number of authorities, and must now be regarded as fully settled.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. Justice McSurely, having heard part of the quo warranto proceedings referred to in the foregoing opinion, took no part in the decision of this case.